IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| GLAVIN IVY,<br><br>    Plaintiff<br><br>vs.<br><br>JOHN WETZEL, SUPT. OBERLANDER,<br><br>    Defendants | 1:21-CV-00109-RAL<br><br>RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE<br><br>MEMORANDUM OPINION ON<br>DEFENDANTS' MOTION TO DISMISS<br><br>ECF NO. 32 |

Defendants, John Wetzel and Superintendent Oberlander, have moved to dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). The Parties have consented to the jurisdiction of a United States Magistrate Judge in these proceedings pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1). *See* ECF Nos. 9, 13. For the reasons stated herein, the motion will be **GRANTED** in part and **DENIED** in part.

I.    Background

Plaintiff Glavin Ivy ("Ivy"), an inmate currently incarcerated at the Pennsylvania State Correctional Institution at Forest, initiated this lawsuit by filing a pro se Complaint alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. *See* ECF No. 5. He alleged that the Defendants failed to provide him with "adequate time or access to legal research materials necessary to maintain his court cases in light of the Covid-19 pandemic." ECF No. 5, ¶ 6. Ivy also filed a motion for a preliminary injunction, which the Court denied. ECF Nos. 6 (motion), 22 (order).

1

The Defendants moved to dismiss Ivy's Complaint. *See* ECF No. 14. The Court granted that motion but permitted Ivy to file an Amended Complaint to cure the pleading deficiencies identified by the Court. *See* ECF Nos. 23, 24. After several extensions of time, Ivy filed his Amended Complaint on January 18, 2022. ECF No. 31. The Defendants then filed the instant motion to dismiss. ECF No. 32. Ivy filed a response in opposition to the motion. The matter is now ripe for disposition.

II.   Standard of Decision

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *See Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing

*Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint.  *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the Court accept legal conclusions disguised as factual allegations.  *See Twombly*, 550 U.S. at 555.  *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Expounding on the *Twombly/Iqbal* line of cases, the Third Circuit has articulated the following three-step approach:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  This determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Finally, because Ivy is representing himself, the allegations in the Amended Complaint must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972).  If the court can reasonably read a pro se litigant's allegation of fact to state a valid claim upon which relief can be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and

sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"). But "any pleading must still contain sufficient factual allegations that, when accepted as true, 'state a claim to relief that is plausible on its face.'" *Heffley v. Steele*, 2019 WL 5092127, at *4 (W.D. Pa. Oct. 11, 2019), *aff'd*, 826 Fed. Appx. 227 (3d Cir. 2020) (citations omitted). *See also Baez v. Mooney*, 2021 WL 816013, at *3 (W.D. Pa. Feb. 8, 2021), *report and recommendation adopted*, 2021 WL 808726 (W.D. Pa. Mar. 3, 2021).

III.   Discussion and Analysis

    A.   The Amended Complaint and the Motion to Dismiss

Like his original pleading, Ivy's Amended Complaint asserts that the Defendants denied or frustrated his access to the courts in violation of his First and Fourteenth Amendment rights. More specifically, he alleges that, as part of a COVID-19 exposure mitigation plan, the Defendants created and enforced a law library schedule that limited his ability to conduct necessary legal research. ECF No. 31, ¶ 63. Ivy contends he suffered an actual injury when his claims of property loss and retaliation were dismissed in a lawsuit he filed in the Court of Common Pleas of Forest County, Pennsylvania: *Ivy v. Kemp*, No. 31-CD-2020. *Id.*, ¶ 64.

Defendants raise two arguments for dismissal. *See* ECF No. 33. First, they argue that Ivy has failed to allege facts to support that either Defendant was personally involved in any alleged denial of his access to the courts. *See id.*, p. 3. Alternatively, they assert that Ivy has failed to allege facts to demonstrate that either Defendant caused him to sustain an "actual injury." *Id.* p. 5.

B.  Discussion and Analysis

1.  Parameters of the Right to Access to the Courts

The First Amendment confers a "right to petition the Government," which encompasses a right to access to the courts. *See Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018). This right, in turn, has been construed to require that the state provide incarcerated persons access to an adequate law library. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996). Courts have held, however, that an inmate may proceed on an access-to-courts claim in only two types of cases: a proceeding directly or collaterally challenging his or her criminal sentence, or a civil rights action challenging his or her conditions of confinement. *See Id.* at 354; *Miller v. Hartwell*, 2022 WL 768295, at *4 (W.D. Pa. Mar. 14, 2022) (citing *Monroe*, 536 F.3d at 205). As the Supreme Court explained,

> ... precedent does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355 (emphasis in original).

Where an inmate asserts that a prison official has inhibited his opportunity to present a legal claim to a court, he must allege facts to support three elements: first, that he suffered an "actual injury" by being shut out of court or losing an arguably meritorious claim; second, that the official's actions proximately caused his actual injury; and third, that "no other 'remedy ... may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Robison v. Vols*, 2021 WL 6135454, at *4 (W.D. Pa. Dec. 29, 2021) (quoting *Monroe v. Beard*,

536 F.3d 198, 206 (3d Cir. 2008)). *See also Miller*, 2022 WL 768295, at *4. In addition, "the complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id. See also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (holding that "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation").

Furthermore, the plaintiff in any civil rights action must demonstrate that each defendant had "personal involvement in the alleged wrongs" upon which he bases his claim. *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citations omitted). Therefore, a government official cannot be held liable for a constitutional violation that he or she neither participated in nor approved. *Id.* Liability cannot be based on a supervisory official's position alone. Instead, the plaintiff must allege facts to show that the defendant personally participated in or directed the violation or had actual knowledge of the violation and acquiesced in its commission. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Davis v. Wetzel*, 2022 WL 1298572, at *5 (M.D. Pa. Mar. 3, 2022).

A policymaker may be liable under § 1983 only where the plaintiff shows that he or she, "with deliberate indifference to the consequences, established and maintained a policy, practice, or custom which directly caused [the] constitutional harm." *A.M. ex rel J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.* 882 F.2d 720, 725 (3d Cir. 1989)).

With these standards in mind, the Court turns now to the facts alleged in Ivy's Amended Complaint.

2.      Facts alleged in the Amended Complaint

The Amended Complaint's principal contention is that the policies and measures implemented by the Defendants to reduce the risk of inmate exposure to the COVID-19 virus unconstitutionally interfered with Ivy's access to the courts. *See* ECF No. 31, ¶¶ 12-13.  Ivy alleges that, on April 3, 2020, Defendant Wetzel's office sent an email that was later shared with the inmate population stating that "all inmates shall be permitted to utilize the law library," but "to further contain the potential spread, and effective immediately, facilities should determine how to provide law library to inmates by cohort to limit exposure between groups." *Id.*, ¶ 14. The Amended Complaint further alleges that "defendant John Wetzel delegated to facilities the determination of <u>how</u> to provide law library to inmates by cohort," but that he also "set forth restrictions, guidelines, and regulations for D.O.C. facilities to adhere to." *Id.*, ¶ 16 (emphasis in original).

Ivy next alleges that Defendant Oberlander "communicated with John Wetzel" and "exchanged ideas, concerns, and direction in regards to the formulation of a schedule designed to separate inmates into cohorts so that in the event of an outbreak, the infected cohort could be isolated and treated." *Id.*, ¶ 17.  According to the Amended Complaint, Oberlander also recorded a series of video messages to the inmate population to inform them about "recent developments, goals of the facility, and discussion of issues and concerns likely held by the inmate population." *Id.*, ¶¶ 19-21.  One of the topics "heavily discussed" by Oberlander was "his efforts in composing a schedule to be followed by his staff and inmates at the facility." *Id.*, ¶ 21. Oberlander also addressed inmate access to the law library. *Id.*, ¶ 23.  Oberlander also visited the inmate's housing units to discuss scheduling and access to the law library and directed that the inmate population be informed in writing regarding scheduling and access to the law library. *Id.*,

¶ 24. These actions, Ivy claims, indicate that Oberlander "undertook the ministerial function of allocating available time to all inmates at SCI-Forest, including the scheduling of Mr. Ivy's law library time." *Id.*, ¶ 26. Although Oberlander directed the law library to provide inmates with copies of case law decisions, Ivy complains that this process took two weeks. *Id.*, ¶ 37. The Amended Complaint further states that between mid-October 2020, and March of 2021, Ivy was permitted only three-hours of law library time. *Id.*, ¶ 32. He points out that the law library schedule changed "several times a month," and that the schedule was often disrupted when "enhanced quarenteen" (sic) procedures were implemented in response to an inmate displaying COVID-19 symptoms. *Id.*, ¶¶ 33-34.

The Amended Complaint alleges that these restrictions caused Ivy to lose certain potentially meritorious claims in the action he filed in Court of Common Pleas of Forest County, in which Ivy asserted that prison officials lost or disposed of certain of his property, including books, in retaliation for his having filed grievances. *Id.*, ¶¶ 41-42. The Amended Complaint also alleges that the defendants in the state court action moved to dismiss Ivy's claim based on sovereign immunity. *Id.*, ¶ 44. The Amended Complaint goes on to allege that Wetzel's and Oberlander's COVID-19 exposure mitigation policies and practices prevented him from conducting the legal research necessary to determine whether he had to plead facts to overcome the affirmative defense of sovereign immunity even before the defendants raised such defense in a responsive pleading, which the defendants failed to do in that [state court] case." *Id.*, ¶¶ 45-47.

Ivy acknowledges that he "did not request a continuance because there was no indication as to when the Covid-19 pandemic would end and when the restrictions placed upon Mr. Ivy would be lifted." *Id.*, ¶ 49. Ivy further admits that he "did not motion for court intervention because Mr. Ivy's experience is that Judges refuse to issue orders directing prison staff to alter

their conduct relying on principles of deference and claiming that they lack authority to issue such orders." *Id.*, ¶ 51. After hearing oral argument, the state court dismissed three of the four claims asserted in Ivy's case, leaving only his Eighth Amendment claim to proceed. *Id.*, ¶¶ 52-53. Ivy acknowledges that he was able to participate in oral argument, but he contends that he was "unprepared" and that "any request for relief from the Court of Common Pleas appeared futile." *Id.*, ¶ 54.

The Amended Complaint also alleges that Ivy was denied access to the law library on March 4 and 11, 2021. *Id.*, ¶ 55. Ivy was informed by prisoner personnel Crowthers and Hutchinson that despite being placed in enhanced quarantine, he would be permitted to go to the law library. *Id.*, ¶ 57. But he was told the next day that he would not be permitted access. *Id.*, ¶ 58. Ivy's quarantine period was over on March 11, 2021, and he was scheduled for the law library that day. *Id.*, ¶ 59. But, upon arrival, Ivy was denied access due to the implementation of a new schedule. *Id.*, ¶ 60.

        3.    Ivy has not alleged facts sufficient to support Wetzel's personal involvement in any denial or limitation of his access to the law library access.

The Court previously dismissed Ivy's claims against Wetzel because he failed to demonstrate his personal involvement in any alleged denial of his access to the prison law library. *See* ECF No. 23, pp. 4-5. The Amended Complaint fails to cure this defect. The Amended Complaint does not allege any facts to support an inference that Wetzel personally denied Ivy access to the law library or directed or knowingly acquiesced in such a denial. Instead, Ivy seeks to impose liability based upon Wetzel having adopted a policy directing and empowering individual corrections institutions to schedule and restrict inmate access to the law library according to inmate cohorts. Ivy apparently alleges that this general COVID-19 exposure

mitigation policy authorized Oberlander to impose the law library access limitations that led to the loss of certain of his state law claims. ECF No. 31, ¶ 33.

Any connection between Wetzel's facially reasonable exposure mitigation policy and Ivy's alleged loss of certain state law claims is too remote to support a viable access to courts claim against him. Ivy acknowledges that Wetzel delegated to each correctional institution responsibility for determining how best to provide law library access while protecting inmates from exposure to COVID-19. *See* ECF No. 31, ¶ 14. He does not allege that Wetzel personally imposed any unreasonable restrictions on his law library access.[1] Accordingly, the claims against Wetzel will be dismissed. *See, e.g., Baker v. Allen*, 2006 WL 1128712, at *14 (D.N.J. Apr. 24, 2006) (no personal involvement where decisions were delegated to another prison official). *See also McFadden v. Friedman*, 2015 WL 5603433, at *1 (N.D.N.Y. Sept. 23, 2015) (finding no personal involvement where defendant merely delegated decision to subordinate staff); *Bennett v. Langford*, 2019 WL 4248897, at *1 (Jan. 31, 2019) (finding no personal involvement where defendant delegated responsibilities to others).

> 4. Generously read, the factual allegations of the Amended Complaint are minimally adequate to support an access-to-courts claim against Oberlander.

Ivy's access to the courts claim against Oberlander is a closer question. As noted, to state such a claim against Oberlander, Ivy must allege facts to support an inference that (1) he suffered an "actual injury" in the form of his loss of an arguably meritorious claim; (2) Oberlander's actions proximately caused his actual injury; and (3) "no other 'remedy ... may be awarded as

---

[1] The Amended Complaint does allege that Wetzel "set forth restrictions, guidelines, and regulations for D.O.C. facilities to adhere to." ECF No. 31, ¶ 16. But Ivy's amended pleading does not identify these with any specificity. The Court previously cautioned Ivy that his Amended Complaint must adequately explain "what direct, personal involvement" Defendant Wetzel had in the alleged constitutional infractions. *See Ivy v. Wetzel*, No. 2012 WL 5240227, at *3 (W.D. Pa. Nov. 10, 2021). These generalized, indirect allegations relating to nonspecific policies and/or regulations are insufficient to establish Wetzel's personal involvement. *See Brooks v. Beard*, 167 Fed. Appx. 923, 925 (3d Cir. 2006); *Cardona v. Carney*, 2021 WL 4902345, at *3 (E.D. Pa. Oct. 20, 2021) (citing *Brooks*).

recompense' for the lost claim other than in the present denial of access suit." *Robison*, 2021 WL 6135454, at *4 (citations omitted). To the extent Ivy's claim is based upon law library scheduling policies adopted by Oberlander, he must also allege facts to support that Oberlander acted with deliberate indifference to his rights. *A.M. ex rel J.M.K.*, 372 F.3d at 586.

The Court has serious doubts regarding the sufficiency of Ivy's factual allegations to support the "arguably meritorious claim," "actual injury," "causation," "no other remedy," or "deliberate indifference" elements of this cause of action. The First Amendment "does not guarantee inmates a minimum amount of time in the law library." *Miller*, 2022 WL 768295, at *4 (citing *Lewis*, 518 U.S. at 355). Providing access to the law library based on inmate cohorts and imposing quarantines restrictions in response to inmates who display COVID-19 symptoms serve obvious penological interests, including protection of inmate health. Furthermore, prison officials face a formidable challenge in balancing and reconciling inmates' First Amendment right to access to a law library with their Eighth Amendment right to be free from conditions of confinement that expose them to unreasonable risks to their health. Ivy all but acknowledges Oberlander's effort to balance these interests when he alleges that Oberlander formulated a "schedule designed to separate inmates into cohorts so that in the event of an outbreak, the infected cohort could be isolated and treated." ECF No. 31 at ¶ 17. Courts rightfully show considerable deference to the decisions of prison officials that appear reasonably calculated to balance and serve such important interests. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987) (citation omitted).

Unlike Wetzel, Oberlander is alleged to have personally participated in formulating the rules that Ivy contends unreasonably restricted his law library access. Ivy asserted that Oberlander composed "a schedule to be followed by his staff and inmates at the facility." ECF

No. 31 at ¶ 21. Ivy also alleges that "Oberlander had knowledge of the impact his schedule had on the inmate population's access to the law library because ... Oberlander discussed this issue and represented to the entire inmate population that he was taking measure to provide legal research materials to the individual housing units." *Id.*, ¶ 25. Ivy also alleges that Oberlander "undertook the ministerial function of allocating available time to all inmates at SCI-Forest, including the scheduling of Ivy's law library time" and that "[n]o subordinate of defendant Oberlander could alter defendant Oberlander's schedule and strict adherence to the schedule was at the personal direction of defendant Oberlander." *Id.*, ¶ 26, ¶ 28. Because Ivy has alleged facts sufficient to support Oberlander's personal involvement in the conduct upon which he bases his claim, the Court must next determine whether that alleged conduct is actionable.

The factual allegations of the Amended Complaint support a plausible inference (albeit, just barely) that Oberlander's alleged actions "caused" Ivy to sustain the type of "injury" necessary to state an access to court claim. Ivy does not allege that Oberlander's COVID mitigation rules rendered him unable to commence and prosecute his lawsuit in state court, that he missed a litigation deadline, or that he was prevented from filing a response to the defendants' motion to dismiss or from participating in oral argument in the state court. Instead, he alleges that his limited access to the prison law library prevented him from conducting adequate legal research to determine whether his state court complaint was required to plead facts to defeat the sovereign immunity defense that the defendants had raised in their preliminary objections. ECF No. 31 at 46. He does not allege that his dismissed state court claims would have survived had he been allowed additional time to conduct legal research and develop his arguments or that the state court erred in dismissing his claims based on sovereign immunity. Thus, it is questionable that Ivy's factual allegations "raise a right to relief above the speculative level." *See Twombly*,

550 U.S. at 556 (citation omitted). Assuming the state court's dismissal was erroneous, the existence of a cognizable injury nevertheless remains in doubt because Ivy's state court case is ongoing, and he will have the opportunity to appeal the erroneous dismissal at the conclusion of the case. Thus, it is also questionable that Ivy has "no other remedy that may be awarded as recompense" for the loss of his claim. *See, e.g., Burk v. Wakefield*, 2022 WL 1785250, at *4 (M.D. Pa. June 1, 2022).

To support the "deliberate indifference" element of his claim against Oberlander as a policymaker, Ivy ultimately would have to produce a record sufficient to support a finding that Overlander's COVID-19 mitigation measures were objectively unreasonable and reflect that he "acted with 'a sufficiently culpable state of mind.'" *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). "To ensure that courts afford appropriate deference to prison officials, [the Supreme Court has] determined that prison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. This is a further high hurdle Ivy may have to overcome in this case.

Despite these reservations, the Court must consider Ivy's pro se status and allow him the benefit of all reasonable inferences from the facts alleged. Based on this standard, the Amended Complaint is minimally sufficient to support his access to court claim. Ivy alleges that his limited access to the law library impaired his ability to perform legal research that might have prevented the dismissal of certain arguably meritorious claims in his state court civil case action against prison personnel. That action raised "claims of property loss (including $1200.00 worth of books) that had been intentionally disposed of or misplaced by prison officials in retaliation

for Mr. Ivy's attempts to gain access to the law library and for filing grievances." ECF No. 31, ¶ 42. These are facially plausible claims. *See, e.g., Burford v. Delaware Cty.*, 2022 WL 784464, at *5 (E.D. Pa. Mar. 15, 2022) (noting that prisoners have procedures under state tort law to gain compensation for the loss of their property). Ivy explains that on December 21, 2020, the defendants in his state case "raised preliminary objections essentially stating that Mr. Ivy had not sufficiently pled elements of the claims set forth." *Id.*, ¶ 44. The state court held oral argument on the defendants' preliminary objections, which Ivy alleges he was unable to prepare for this argument because of Oberlander's restrictive policies. *Id.*, ¶¶ 51, 54. The state court then dismissed three of Ivy's four claims. *Id.*, ¶ 52.

Ivy pleads that because of his inability to access the prison's law library, he was unable to "research case-law clarifying whether or not plaintiff had to plead facts overcoming the affirmative defense of sovereign immunity even before the defendants raised such defense in a responsive pleading." *Id.*, ¶ 46. Thus, it appears that Ivy is asserting that he wished to research whether the defendants' raising of this affirmative defense by preliminary objections was procedurally improper. He does not allege, however, that he could have alleged additional facts that would have negated sovereign immunity or placed the state court defendants' conduct within an exception to immunity. *See, e.g., Sanchez v. Pirolli*, 2021 WL 6137076, at *9-10 (E.D. Pa. Dec. 29, 2021) ("While the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa. Con. Stat. § 8541, provides "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," there are eight exceptions to this grant of immunity …").

Construing the Amended Complaint liberally, these allegations are sufficient to state an access-to-court claim. *See, e.g., Allah v. Seiverling*, 229 F.3d 220, 224 (3d Cir. 2000). Ivy has

alleged that the restrictions Oberlander placed on access to the prison law library prevented him from being able to defend against the dismissal of his nonfrivolous claims in a state court proceeding and that said claims were ultimately dismissed. Further, because he was pursuing the appropriate state court remedy for the loss of his property, at this early stage of the proceedings that Court may infer, without conclusively deciding, that Ivy has "no other remedy that may be awarded as recompense" for the loss of his claim. *See, e.g., Burk v. Wakefield*, 2022 WL 1785250, at *4 (M.D. Pa. June 1, 2022). At this juncture then, he has sufficiently stated an access-to-court claim against Oberlander. The concerns raised by the Court, while substantial, are more appropriately addressed in later proceedings when the record is more fully developed. *See Taylor v. Cox*, 912 F. Supp. 140, 144 (E.D. Pa. 1995). Defendants' motion to dismiss will therefore be denied as to Oberlander.

IV.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss Ivy's Amended Complaint will be granted as to Defendant Wetzel, and the claims against him will be dismissed with prejudice. The motion will be denied as to Defendant Oberlander.

A separate order follows.

DATED this 6th day of June, 2022.

BY THE COURT:

_____
RICHARD A. LANZILLO
UNITED STATES MAGISTRATE JUDGE