IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| GLAVIN IVY, | ) |
| | ) |
| Plaintiff | ) 1:21-CV-00109-RAL |
| | ) |
| vs. | ) RICHARD A. LANZILLO |
| | ) CHIEF UNITED STATES |
| SUPT. OBERLANDER, | ) MAGISTRATE JUDGE |
| | ) |
| Defendant | ) MEMORANDUM OPINION ON |
| | ) DEFENDANT OBERLANDER'S MOTION |
| | ) FOR SUMMARY JUDGMENT |
| | ) |
| | ) ECF NO. 50 |

I.     Introduction and Background

Plaintiff Glavin J. Ivy, an inmate incarcerated at the State Correctional Institution at Forest ("SCI-Forest"), commenced this civil action against the former Secretary of the Department of Corrections, John Wetzel, and SCI-Forest Superintendent Oberlander. *See* ECF No. 1. Ivy's Complaint alleged that various restrictions imposed at SCI-Forest during the COVID-19 pandemic limited his access to the prison law library and thereby hindered his ability to litigate other lawsuits he had pending. *See* ECF No. 5. The Court granted the Defendants' motion to dismiss the Complaint pursuant to Rule 12(b)(6) but permitted Ivy to file an Amended Complaint to attempt to cure the deficiencies of his claims. *See* ECF No. 23, p. 5. Ivy filed his Amended Complaint, which again asserted that the Defendants had denied or frustrated his access to courts through their adoption of certain restrictions in the prison's COVID-19 exposure mitigation plan. *See* ECF No. 31. The Defendants again moved to dismiss the Amended

1

Complaint. The Court granted the motion as to the claims against Wetzel, this time with prejudice, because Ivy had failed to allege facts sufficient to support Wetzel's personal involvement in denying or limiting his access to the law library. ECF No. 36, p. 9. The Court denied the motion as to Ivy's claims against Oberlander. *Id.*, p. 10.

After the close of discovery, Oberlander filed his pending motion for summary judgment, accompanied by a supporting brief, a concise statement of material facts, and an appendix. *See* ECF Nos. 50, 51, 52, and 53. Ivy filed a "response" asserting that he was unable to respond substantively to the motion because he needed to engage in discovery. *See* ECF No. 56. The Court construed Ivy's response as a motion to reopen discovery. So construed, the Court denied the motion based on its untimeliness and Ivy's failure to specify what discovery he wished to take and how it related to the issues raised in Oberlander's motion for summary judgment.[1] ECF No. 57. Ivy has not submitted a brief in opposition to the motion or a responsive concise statement of material facts.

Following careful review of the record and relevant case law, Oberlander's motion for summary judgment will be granted.[2]

---

[1] Ivy did not submit an affidavit or declaration pursuant to Fed. R. Civ. P. 56(e) (formerly Rule 56(f)) to request deferral of the motion for summary judgment or the opportunity to reopen and take discovery. Ivy's response failed to comply with both the form and substantive requirements of Rule 56(e). The Court of Appeals for the Third Circuit has stated that the party opposing a motion pursuant to Rule 56(e) must do so by affidavit and "must still 'identify with specificity what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained.'" *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir.1994) (quoting *Lunderstadt v. Colafella*, 885 F.2d 66, 70 (3d Cir.1989)).

[2] Full consent of the parties to proceed before a United States Magistrate Judge was obtained on May 27, 2021. *See* ECF Nos. 9, 13. *See also* 28 U.S.C. § 636(c)(1)-(2).

II.     Standard of Decision

Federal Rule of Civil Procedure 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Further, under Rule 56, a defendant may seek summary judgment by pointing to the absence of a genuine fact issue on one or more essential claim elements. *See Celotex*, 477 U.S. at 323 (holding that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"); *see also Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). In this respect, "[s]ummary judgment is essentially 'put up or shut up' time for the non-moving party." *NVR Inc., v. Majestic Hills, LLC*, 2023 WL 3043780, at *3 (W.D. Pa. Apr. 21, 2023) (quoting *Berckeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

Where, as here, a "summary judgment motion is uncontested, the non-responding party does not lose the summary judgment motion by default." *Hitchens v. Cty. of Montgomery*, 98 Fed. Appx 106, 110 (3d Cir. 2004); *see also Nunez v. Heere*, 2020 WL 587021, at *2 (E.D. Pa. Feb. 6, 2020). The Court must still determine whether the "evidence designated in or in connection with the motion entitles the moving party to judgment as a matter of law." *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 992 F.2d 168, 175 (3d Cir. 1990) (citation omitted). "By failing to respond, however, 'the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion.'" *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp.2d 449, 453 (E.D. Pa. 2003).

The foregoing standards apply with equal force to *pro se* litigants such as Williams. However, Williams' Verified Amended Complaint will be considered as an affidavit under Rule 56 for purposes of Oberlander's motion. *See Jackson v. Armel*, 2020 WL 2104748 at *5 (W.D. Pa. May 1, 2020). To the extent it includes factual statements that are based on Ivy's personal knowledge, they will be considered as part of the summary judgment record.

III.   Discussion and Analysis

    A.   Ivy has failed to properly exhaust his administrative remedies as to his claims for money damages against Oberlander.

Oberlander argues that Ivy failed to exhaust his administrative remedies with respect to his claims for money damages against him because he did not request such damages in his relevant grievances as required by DOC policy. Oberlander further argues that the Prison Litigation Reform Act of 1995 ("PLRA"), therefore, bars his recovery of such damages. *See* ECF No. 51, p. 3. Failure to exhaust administrative remedies under the PLRA is an affirmative defense that a defendant must plead and prove. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). Oberlander has properly raised and supported his exhaustion defense in this case.

The PLRA requires inmates to exhaust all available administrative remedies before bringing a lawsuit concerning prison conditions pursuant to §1983. *See* 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all claims relating to prison life except those that implicate the duration of a prisoner's sentence. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002). Moreover, "proper exhaustion" is required. That is, a prisoner must complete the administrative review process according to the procedural rules of the institution's grievance process. *Fennell v. Cambria Cty. Prison*, 607 Fed. Appx. 145, 149 (3d Cir. 2015).

DOC Policy DC ADM-804, which governs prisoner grievance procedures in Pennsylvania state correctional institutions, mandates that an inmate who "desires compensation or other legal relief normally available from a court must request the relief with specificity in his/her initial grievance." *See* DC-804 Inmate Grievance System Procedures Manual, at § 1(A)(11)(d). Failure to comply with this requirement is a procedural default and precludes an inmate from claiming or recovering such compensation in a subsequent lawsuit. *See Everett v.*

5

*Robinson*, 2022 WL 695041, at *3 (W.D. Pa. June 2, 2022). *See also Camacho v. Beers*, 2018 WL 6618410, at *2 (W.D. Pa. Dec. 18, 2018) (citing *Wright v. Sauers*, 2017 WL 3731957, at *7 (W.D. Pa. Aug. 30, 2017) (finding procedural default where plaintiff failed to set forth desired monetary relief on his initial grievance form as required by DC-ADM 804); *Mobley v. Snyder*, 2015 WL 5123909, at *9 (M.D. Pa. Sept. 1, 2015) (holding that "because Mobley did not specifically request monetary damages in his initial grievance, as required by the version on DC-ADM 804 in effect at the relevant time, [he] procedurally defaulted his claims for monetary damages"); *Sanders v. Beard*, 2013 WL 1703582, at *6-7 (M.D. Pa. Apr 19, 2013) (dismissing claims for monetary damages brought by plaintiffs who did not request monetary damages in their initial grievances as required by DC-ADM 804)).

Here, Ivy maintains that the restrictions on law library access between "early 2020" and the "summer of 2021" prohibited him from properly litigating several of the cases he had pending in state and federal court. *See* ECF No. 31, ¶¶ 11, 18, 32. During that interval, Ivy filed two grievances relevant to his claim: Grievance 870367 and Grievance 89845. *See* ECF No. 52-1; ECF No. 52-2. A review of those grievances reveals that Ivy did not request monetary compensation in either. In Grievance 870367, Ivy complained that he was denied access to the law library on a specific date when he was scheduled to receive it and that the new schedule limited his law library access. ECF No. 52-1, p. 1. As relief, he requested "access to paper (which is out of stock) and adequate access to the law library." *Id.* Neither Ivy's grievance nor his appeals to the facility manager or to final review following denial of his grievance requested monetary compensation.[3] *See id.*, pp. 3-5. Similarly, in Grievance 898455, Ivy requested only

---

[3] The record also includes a DC-135A Request to Staff form that Ivy submitted and that also requested increased access to the law library. ECF No. 52-1, p. 6. This submission also did not include any request for monetary relief. *See id.*

6

"more time in the law library." *See* ECF No. 52-2, p. 1. Again, Ivy did not request monetary compensation in either his appeal to the facility manager or to final review following the denial of this grievance. *Id.*, pp. 3, 5.

Thus, the record establishes that Ivy did not ask for monetary compensation in any grievance relating to restrictions on law library access due to COVID-19 mitigation restrictions.[4] While such a request need not be so precise that it "sets forth a specific dollar amount," the inmate "must at least make a clear request for compensation." *Everett*, 2022 WL 6795041, at *4 (citing *Hobson v. Tiller*, 2021 WL 2191282, at *2 (W.D. Pa. May 6, 2021)). Moreover, an inmate must identify the individual or individuals involved in the contested conduct with sufficient particularity that prison officials have a "fair opportunity" to address the problem identified in the grievance. *Id.* (citing *Stone v. Johnson,* 713 Fed. Appx. 103, 105 (3d Cir. 2017)). Neither of Ivy's grievances names or otherwise identifies Oberlander or any other individual who Ivy considered responsible for restricting his law library access. Ivy's failure to request monetary compensation or to identify Oberlander as responsible for restricting his law library access are procedural defaults under DC-ADM 804 and establish that he did not properly exhaust his administrative remedies concerning any claim for monetary compensation against Oberlander. As a result, the PLRA precludes his recovery of such damages in this lawsuit and entitles Oberlander to judgment to judgment as a matter of law as to this claim. *See, e.g., Piazza v. Kauffman*, 2023 WL 2742740, at *7 (M.D. Pa. Mar. 31, 2023).

---

[4] The record belies Ivy's testimony at his deposition that, despite his familiarity with the grievance process, "I always state – I ask for monetary relief, attorney's fees, court costs, staff reprimands and punitive damages that are relevant." ECF No. 52-5, p. 9. And notably, when defense counsel asked him to identify "what specific relief you were seeking in the grievances you filed relative to your access to court complaint," Ivy responded that "adequate access to the law library" was "the main purpose of the grievance." *Id.*, p. 10.

B. Oberlander is also entitled to judgment as matter of law on Ivy's claims for Injunctive and Declaratory Relief.

Ivy's Amended Complaint also requests injunctive and declaratory relief in the form of an order granting him access to the law library. *See* ECF No. 31, pp. 9-10. At the outset, the Court notes that the record includes no evidence to support that COVID-19 mitigation restrictions on law library access remain in place or currently limit Ivy's access. As no such restrictions remain, Ivy's claim for injunctive relief is moot. Any request for declaratory relief would also fail for similar reasons. The Supreme Court has held that claims against state actors for injunctive or declaratory relief must be prospective in nature and address a violation that is ongoing. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996) ("[W]e often have found federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'") (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)). In this case, the record includes no support for a finding that any alleged violation of Ivy's right to law library access or his right to access to the courts is ongoing.

Moreover, even if COVID-19 law library restrictions have remained in effect, Ivy's injunctive and declaratory relief claims would still fail on the merits. Ivy claimed that Oberlander's limitations on law library access during the COVID-19 pandemic violated his First and Fourteenth Amendment rights to "access the courts." *Id.*; *see Diaz v. Holder*, 532 Fed. Appx. 61, 63 (3d Cir. 2013) (per curiam) (access to law library considered an access to courts claim under the First Amendment); *see also Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)). An inmate may only proceed on an access-to-courts claim in two situations: a direct challenge or a collateral challenge "to their sentences [or]

conditions of [their] confinement." *Id.* (citing *Lewis*, 536 U.S. at 415). Ivy's claim is "backward-looking in nature" and is a direct challenge to the conditions of his confinement, *i.e.*, access to the law library. *Fennell v. Wetzel*, 2023 WL 199716 at *7 (M.D. Pa. Feb. 14, 2023).[5] In such situations, the prisoner must demonstrate "(1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). To sustain the first element, Ivy must demonstrate that his lost claim was "more than a hope." *Christopher*, 536 U.S. at 416-17.

Ivy contends that between October of 2020, and March of 2021, he gained access to the law library for a total of three hours.[6] *See* ECF No. 52-5, p. 8 (Ivy Deposition). This, he asserts, impeded him from litigating his misappropriation of property case in the Court of Common Pleas for Forest County. *Id.*; *see also* ECF No. 31, ¶¶ 32, 46. Specifically, and as noted in this Court's prior opinion, Ivy argues that the law library restrictions prevented him from "conducting legal research" to overcome a defense of sovereign immunity. *See* ECF No. 36, p. 8. But the docket in that case tells a different story.

---

[5] Such claims differ from those which are "forward looking" in which plaintiffs allege that "systematic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." *Christopher v. Harbury*, 536 U.S. 403, 413 (2002).

[6] Oberlander asserts that Ivy accessed the prison's law library on November 13, 2020, December 3, 2020, December 15, 2020, December 20, 2020, February 3, 2021, and December 19, 2021, and failed to show up for scheduled law library time on November 17, 2020. *See* ECF No. 53, ¶ 7. The Court will not consider these assertions in its evaluation of the record or Oberlander's motion. Oberlander does not cite any record evidence to support these assertions, and Ivy specifically disputed them during his deposition. *See* ECF No. 52-5, p. 8 ("I'm going to dispute that ... I don't know what you're referring to; I don't recall going to the law library on those dates."). Counsel's deposition "[q]uestions are not evidence." *VanWyngarden v. Am. W. Airlines, Inc.*, 2006 WL 8436778, at *3 n.2 (S.D. Iowa Oct. 19, 2006). The law library visitor logs for the subject dates are not part of the record.

Ivy has failed to demonstrate any meaningful limitation on his access to the courts. To the contrary, between October of 2020, and March of 2021, Ivy litigated his case in the state court seemingly without impediment. For example, during the time interval Ivy alleges he was deprived of law library access, he filed a motion for leave to amend his complaint (November 5, 2020), a praecipe for entry of default judgment (December 21, 2020), a response to the defendants' preliminary objections (December 28, 2020), a supplemental response to defendants' preliminary objections (February 1, 2021), correspondence to the court requesting documents (February 22, 2021), a motion for reconsideration and motion for determination of finality (March 8, 2021), and another motion for leave to amend his complaint (March 25, 2021). *See* ECF No. 52-4, pp. 5-6 (state court docket).[7] The state court docket shows that Ivy never moved for an extension of time to file any brief, motion, pleading, or other submission during the time he asserts his access the law library was limited. *See, e.g., Brooks v. DiGuglielmo*, 2008 WL 5187529, at *7 (E.D. Pa. Dec. 9, 2008) (no access to courts claim where inmate was able to file a motion for extension of time); *Jannoe v. Garcia*, 2007 WL 1110914, at *13 (S.D. Cal. Mar. 29, 2007) (inmate presented no evidence that his limited library time prevented him from seeking an extension of time). Ivy does not dispute that he did not seek any extension of time from the state court based on restricted law library access. He attempted to justify this failure by arguing that, in his experience, "judges refuse to issue orders directing prison staff to alter their conduct relying on principles of deference and claiming that they lack authority to issue such orders." ECF No. 31, ¶ 51. This contention is uncompelling. A request for extension is made to the trial court based on circumstances at the prison and in no way asks the court to direct the prison itself

---

[7] Defendant Oberlander has submitted the docket from Ivy's state court case, the authenticity of which Ivy does not dispute. *See* ECF No. 54-4. Furthermore, this Court may take judicial notice of this public record. *See Miller v. Victory*, 2022 WL 17128634 at *2 (W.D. Pa. Nov. 22, 2022) (citation omitted).

to do anything. And Ivy's testimony at his deposition belies his position that moving for an extension of time would have been futile. He acknowledged that he had sought and received extensions of time in the other lawsuits he had pending during the COVID-19 restrictions, stating specifically that he had "asked for an extension probably in every single case," and that he was "granted an extension in them ever time." *See* ECF No. 52-5, pp. 10-11. Ivy's admission that he was aware that the courts routinely grant extensions of time to file papers but that he did not seek such an extension to research and file a brief on the sovereign immunity issue further undermines any claim that the COVID-19 restrictions caused him to lose a meritorious claim. *See Smarr v. Westmoreland County*, 2023 WL 2413413, at *2 (W.D. Pa. Feb. 16, 2023) (denying reconsideration motion where other plaintiffs were "on some basis, [able to] access the law library during COVID or, if not, request an extension of time"); *Martin v. Wetzel*, 2021 WL 2926005, at *17 (W.D. Pa. July 12, 2021) (citing *Singleton v. Robinson*, 679 Fed. Appx 110, 113 (3d Cir. 2017)).

The state court docket further refutes that library access restrictions prevented Ivy from fairly responding to the defendants' assertion of sovereign immunity in that case. In fact, the Court of Common Pleas held that Ivy had successfully "asserted a cause of action in negligence regarding the mishandling of his personal property" and that the claim therefore would not be dismissed based on sovereign immunity.[8] *See* ECF No. 52-3, p. 2 (Common Pleas Court Opinion, Skerda, J.). Thus, Ivy did not lose the claim he identified in this case and has thus not demonstrated an actual injury. Accordingly, there is no genuine issue of material fact regarding whether Oberlander denied Ivy access to courts.

---

[8] The Common Pleas Court noted that among the instances wherein the Commonwealth of Pennsylvania may be liable are those concerning "the care, custody, or control of personal property." *See* ECF No. 52-3, p. 2 (citing 42 Pa. C.S.A. § 8522(b)).

11

IV. Conclusion

Oberlander had produced a record demonstrating his entitlement to summary judgment on Ivy's claim for monetary damages based on Ivy's failure to exhaust his administrative remedies as to that claim, and Ivy has failed to adduce evidence to support any genuine issue of material fact concerning Oberlander's exhaustion defense. Ivy has also failed to submit evidence to support a genuine issue of material fact that he lost a nonfrivolous claim in state court due to COVID-19 restrictions allegedly imposed by Oberlander or that any such restriction presently impedes his access to the courts. Accordingly, Oberlander is also entitled to summary judgment on Ivy's claims for injunctive and declaratory relief.

A separate judgment order pursuant to Fed. R. Civ. P. 58 will follow.

DATED this 1st day of June, 2023.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE